### Gedeon, Appellant, v. State Farm Mutual Automobile Insurance Company.

Argued October 4, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

reargument refused March 9, 1963.

*Paul A. Simmons,* with him *Hirsch & Hirsch,* for appellant.

*Francis H. Patrono,* with him *Patrono and Edwards,* for appellee.

OPINION BY MR. JUSTICE COHEN, January 21, 1963:

An automobile liability insurance policy was issued to appellant by appellee-insurance company on May 18, 1955, insuring him against liability for bodily injury to one person in the amount of $10,000. On August 11, 1955, while the said automobile was being driven by appellant, it was involved in an accident in which appellant's wife, a passenger in the car, was killed. Appellant subsequently qualified as administrator of his wife's estate and, in such representative capacity, instituted suit under the Wrongful Death Act naming himself as defendant-tortfeasor.[1] Appellee refused to defend this action on the grounds that the policy was not in force on the day of the accident, and, even if it were, indemnity for liability to members of the insured's household was specifically excluded from the policy's coverage. Appellant did not hire substitute counsel nor did he spend other funds in defense of the wrongful death action. Trial resulted in a verdict of $51,318.90 in favor of appellant as administrator.

Appellant in his individual capacity then instituted the present action of assumpsit claiming the $51,318.90 judgment as the damages resulting from appellee's breach of its covenant to defend him. The case was heard by a judge sitting without a jury and judgment entered for the appellee. After argument before the court en banc, this judgment was affirmed by a divided court with the majority setting forth three separate reasons for its decision: (1) that the policy was not in force on the day of the accident because of a failure to pay premiums; (2) that even if the policy were in force, obligations to members of the insured's household were specifically excluded from coverage; (3) that even if there were a breach of appellee's contractual

---

[1] Appellant disclaimed any benefit that might accrue to himself from the wrongful death action and thus the only beneficiaries of the action were the children.

obligation to defend, appellant had shown no damages resulting from such breach. Because we agree with the court below on the third of these grounds, we need not determine the correctness of their rulings on the first two grounds.

Under a typical automobile liability insurance policy, such as the one before us, the insurer undertakes three distinct types of obligations, each of which involves different elements of proof to establish breach thereof, and from the breach of which different measures of recovery result.[2] In the first place, the insurer agrees to indemnify against liability for personal or property damage and to indemnify against certain kinds of property damage to the automobile itself. In order to establish breach of this promise to indemnify, the insured must demonstrate that the policy covers the particular risk in question. The amount of recovery for breach of this obligation is usually determined by the terms of the policy.

Secondly, the insurer agrees to defend the insured against any suits arising under the policy "even if such suit is groundless, false, or fraudulent." Since the insurer thus agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, our cases have held that the obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy. See *Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 152 A. 2d 484 (1959).[3] Consequently, there may be an obligation to defend although no ob-

---

[2] Of course, these obligations arise only if the insured can show that the policy was in force on the day of the accident in question.

[3] The insurance company may defend the action with the express understanding that it is not admitting coverage by so doing. See *Laroche v. Farm Bureau Mutual Automobile Insurance Co.*, 335 Pa. 478, 7 A. 2d 361 (1939).

ligation to indemnify. See *Zeitz v. Zurich General Accident & Liability Ins. Company, Ltd.,* 165 Pa. Superior Ct. 295, 67 A. 2d 742 (1949) ; *Lee v. Aetna Casualty & Surety Co.,* 178 F. 2d 750 (2d Cir. 1949). A refusal without good cause to defend breaches this obligation and gives rise to a cause of action regardless of the good faith of the insurer.[4] See *King v. Automobile Underwriters, Inc.,* 409 Pa. 608, 187 A. 2d 584 (1963). Based on the usual contract rule for determining damages,[5] the recovery for breach of the covenant to defend will ordinarily be the cost of hiring substitute counsel and other costs of the defense. This recovery may be in addition to any other obtained against the insurer.

Thirdly, by asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured. If the insurer is derelict in this duty, as where it negligently investigates the claim or unreasonably refuses an offer of settlement, it may be liable regardless of the limits of the policy for the entire amount of the judgment secured against the insured. See *Cowden v. Aetna Casualty and Surety Company,* 389 Pa. 459, 134 A. 2d 223

---

[4] "Good cause" as used in this connection should not be confused with "good faith." Where, as in *Epstein v. Erie Indemnity Company,* 39 Pa. D. & C. 117 (1940), aff'd per curiam, 340 Pa. 417, 16 A. 2d 47 (1940), the insured refuses to cooperate with the insurer in the preparation of the litigation, the latter has good cause for its refusal to defend. However, the good faith of the insurer's belief that it had no contractual duty to defend a particular action is not a defense.

[5] The general rule is to award damages which will place the injured party in the position which he would have been in had the obligation in question been performed. Restatement, Contracts §329(a) (1932).

(1957).[6] Once again there can be a breach of this fiduciary duty without a breach of either the covenant to indemnify or the covenant to defend.

The complaint of appellant-insured evidences his confusion as to the nature of these different obligations of appellee-insurer. The sole basis of the complaint is appellee's refusal to defend the wrongful death action. Appellant does not seek to recover $10,000 under the indemnity clause,[7] nor does he allege a refusal to settle or other mishandling of the claim by appellee.[8] Yet appellant claims as damages for breach of this duty to defend the $51,318.90 judgment obtained against him in the wrongful death action. The cases he relies upon to justify such recovery illustrate his failure to distinguish between the insurer's breach of its duty to defend, i.e., refusal to defend, and breach of its duty to defend with due care, i.e., mishandling of the claim. As we have seen, the amount of recovery for breach of the former obligation is the cost of hiring substitute counsel and other costs of the defense, and not the judgment obtained against the insured. Since the facts reveal that appellant expended no funds in defense of the wrongful death action, we agree with the court below that, even if appellee did breach its covenant to defend, appellant has shown no damages resulting from this breach.

Judgment affirmed.

---

[6] For a comprehensive analysis of this fiduciary obligation, see Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv. L. Rev. 1136 (1954).

[7] Such a suit in this situation would properly be brought by appellant in his representative capacity for the benefit of the children.

[8] In fact, appellant conducted the defense of the wrongful death action himself.

CONCURRING OPINION BY MR. JUSTICE EAGEN:

The cogent opinion of Mr. Justice COHEN does much to clarify the real obligations of an insurance company under the provisions of an automobile liability insurance policy as here involved. However, I think one area should be further clarified.

The majority opinion provides for recovery in excess of the policy limits where the insurer "negligently investigates the claim or unreasonably refuses an offer of settlement . . ." In *Cowden v. Aetna Casualty and Surety Company,* 389 Pa. 459, 134 A. 2d 223 (1957), the following rules were laid down in this area of the duty to settle:

(1) The interests of insured and the insurer are balanced by requiring the insurer to treat the claim as if he alone were liable for the entire amount.

(2) When there is little possibility of a verdict or settlement within the policy limits, the decision to expose the insured to personal pecuniary loss must be based on a bona fide belief by the insurer, predicated on all of the circumstances of the case, that it has a good possibility of winning the suit.

(3) The insurer cannot hazard the well-being of the insured.

(4) Good faith requires that the chance of a finding of nonliability be real and substantial and that the decision to litigate be made honestly.

The foregoing rules, I believe, establish a standard by which it can be determined whether the insurer exercised due care in a particular case. I would base the liability of the insurer for a breach of the duty to settle on the theory of negligence using the above rules as a standard and in that way eliminate the dichotomy between bad faith and negligence with regard to the duty to settle and the duty of handling the case with ordinary care.