421 A.2d 357

**W. T. GRANT CO., INC.**

v.

**U.S.F. & G. INSURANCE COMPANY.**

**Appeal of W. T. GRANT at No. 1152.**

**Appeal of U.S.F. & G. INSURANCE CO. at No. 1067.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1979.

Filed Aug. 1, 1980.

592

Joseph F. Leeson, Bethlehem, for U.S.F. & G. Ins. Co.

Robert C. Brown, Jr., Easton, for W. T. Grant Co., Inc.

Before PRICE, WATKINS and HOFFMAN, JJ.

WATKINS, Judge:

This is an appeal from a final judgment entered upon the verdict by the Honorable Alfred T. William, Jr., President Judge, Court of Common Pleas, Northampton County, on motions for summary judgment filed by both the plaintiff below, W.T. Grant, Co., Inc., (Appellee at No. 1067 and

hereinafter referred to as "Grant") and defendant below, U.S.F. & G. Insurance Company (Appellant at No. 1067 and hereinafter referred to as "U.S.F. & G."). Final judgment was entered in favor of Grant in the amount of $26,661.02 but an award of interest was denied. U.S.F. & G. appeals from the judgment against it in the amount of $26,661.02 and Grant appeals from the denial of interest.

The present suit is In Assumpsit for Indemnification. Grant is seeking to recover the amount it paid as a settlement contribution, costs and attorneys' fees incurred in defending a lawsuit which it asserts should properly have been defended by U.S.F. & G. under the provisions of a U.S.F. & G. General Comprehensive Liability Insurance Policy.

The pertinent facts are contained in the stipulated record filed by counsel in support of the Motions for Summary Judgment. In brief, Grant was at all relevant times a retail seller of above–ground swimming pools and accessories manufactured by H.P.E. Inc., trading as Muskin Manufacturing Company, Inc. On or about July 11, 1968, Grant sold a Muskin swimming pool, ladder and filter to Mr. and Mrs. Harold McArdle. The pool and ladder had been assembled as a display model outside Grant's store and they were sold at a reduced price and delivered to the McArdle's home. It should be noted that U.S.F. & G.'s counsel's statement that the pool and ladder had been sold in an "as is" condition is not supported by the record. The Stipulation of Counsel was that the pool, ladder and filter were sold at a "reduced price"; there is no stipulation that they were sold in an "as is" condition. The phrase "as is" finds its way into the record merely as a statement made by counsel for U.S.F. & G. at a pretrial conference on September 19, 1972, where counsel stated: "There was a clearance sale which W.T. Grant was running to dispose of these left–over pools, and the plaintiffs–the wife of McArdle, Mrs. McArdle, as I understand, went to W.T. Grant and bought this pool on a special as–is sale or some basis like that. She got a reduction in price, in any event." Thus, it is submitted that there

can be no finding of fact that the pool and ladder were sold with a limited warranty, i. e. in an "as is" condition.

The pool was delivered in an unassembled condition and the ladder was delivered in an assembled condition except for attachment of the ladder base support. The McArdles were supplied with the original manufacturer's assembling instructions and they assembled the pool and attached the base support to the ladder. On or about July 27, 1968, Mr. Leslie Herman, a guest of the McArdles on that afternoon, was injured in a dive or fall from the platform of the swimming pool ladder, resulting in paralysis and lingering illness. Subsequently, Mr. Herman died, possibly due to complications from the original injuries.

On July 16, 1970, two lawsuits were instituted seeking to recover damages for the injuries sustained by Mr. Herman. The retailer, W.T. Grant Co., Inc., and the manufacturer, H.P.E. Inc., trading as Muskin Manufacturing Co., Inc., were two of the defendants named. The Hermans' lawsuits were predicated on a theory of strict liability, negligence and breach of expressed and implied warranties. The thrust of the Hermans' claim was that the ladder was not designed properly; that because of defective design, the ladder was unstable and that it shifted while Mr. Herman was on the platform, causing him to lose his balance, hurl through the air and fall into the pool. The Hermans' also alleged that the instructions provided with the pool and ladder were inadequate and failed to provide warnings for safe use and inspection.

Grant, as the seller of the pool and platform ladder, requested that the manufacturer's insurance company, U.S.F. & G., assume the defense of the lawsuit brought by the Hermans and provide insurance coverage, if necessary. U.S.F. & G. denied Grant's request stating that coverage for design defects was excluded and that Grant did not come within the scope of the Vendor's Endorsement. Grant retained its own counsel and the lawsuits were subsequently settled for $71,000.00; $25,000.00 was contributed by Liberty Mutual Insurance Company on behalf of W.T. Grant Co.,

$35,000.00 was contributed by H.P.E., Inc., trading as Muskin Manufacturing Co., Inc., $10,000.00 was contributed by U.S.F. & G. as Muskin's insurance company and the remaining $1,000.00 was contributed by the homeowner's insurance carrier for the McArdles. Thereafter, Grant instituted the present suit claiming that U.S.F. & G.'s failure to provide a defense under the terms of the manufacturer's insurance policy was wrongful and that Grant should therefore be indemnified for the amount of the settlement contribution (i. e. $25,000.00) and attorneys' fees and costs (i. e. $1,661.02).

The lower court found that coverage under U.S.F. & G.'s Comprehensive General Liability Insurance Policy and Broad Form Vendor's Endorsement extended to Grant and entered final judgment against U.S.F. & G. in the amount of $26,-661.02.

Appellant U.S.F. & G. contends that recovery should be denied appellee Grant because Liberty Mutual is the real party in interest under Pennsylvania Rules of Civil Procedure Rule 2002. Liberty Mutual is entitled to subrogation to any recovery by Grant and under Rule 2002(d) has the option of bringing the suit in its name or that of its subrogee (Grant). The pertinent section clearly states: "(d) Clause (a) of this rule shall not be mandatory where a subrogee is a real party in interest."

Next appellant contends that it was not obligated to defendant Grant in a case predicated upon design defect failure to warn, and failure to provide instructions because of Exclusion K of the policy of insurance issued to the manufacturer.

Exclusion K reads as follows:

This insurance does not apply: . . .

"(k) to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications or advertising materi-

al or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work:"

This liability policy was prepared and adopted by appellant (U.S.F. & G.) and any ambiguities therein shall be construed against the maker. *Slate Construction Company v. Bituminous Casualty Corp.*, 228 Pa.Super. 1, 323 A.2d 141 (1974).

A review of cases involving this clause reveals the confusion and ambiguity of same. There is little agreement between companies themselves and applicable rational examples of its meaning are difficult to imagine. This is certainly one of the areas in insurance policies where plain language which is readily understandable, should be requested.

In the present case, considering the extensive stipulation of facts and pre–trial conferences, all of which have been agreed to by appellant, it appears that the ladder fulfilled its intended function but caused the injury by actively malfunctioning. This is just one interpretation under the exclusion and surely others could be provided and because of this ambiguity we construe the clause in favor of the insured and appellant cannot rely on exclusion "K" in declining to defend.

Appellant also contends there is no duty to defend because the product was altered and therefore not covered by the "Broad Form Vendor's Endorsement". This endorsement is as follows:

"It is agreed that the 'Persons Insured' provision is amended to include any person or organization as an *Insured*, but only with respect to the distribution or sale in the regular course of the Vendor's business of the *Named Insured's products* subject to the following additional provisions:

1. The insurance with respect to the vendor does not apply to:

(a) any express warranty unauthorized by the Names Insured;

(b) bodily injury or property damage arising out of (i) any physical or chemical change in the form of the product made intentionally by the vendor,

(ii) repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer and then repacked in the original contained,

(iii) demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product, or

(iv) products which after distribution or sale by the Names Insured have been labeled or relabeled or used as a contained, part or ingredient of any other thing or substance by or for the vendor.

2. The insurance does not apply to any person or organization, as *Insured*, from whom the *Named Insured* has acquired such products or any ingredient; part or contained, entering into, accompanying or containing such product."

■■■ Exclusion from coverage under this endorsement is an affirmative defense and appellant had not met its burden. *Miller v. Boston Insurance Co.*, 420 Pa. 566, 218 A.2d 275 (1966). It appears the product was packed for demonstration by the vendor and after sale was delivered to the purchaser in an almost completely assembled condition, unaltered and with all the manufacturer's instructions included.

Appellants refused to defend appellee, Grant was in error and defended at its own peril though in good faith. It now owes the insured appellee the settlement contribution and reasonable attorneys' fees and costs under its duty to indemnify. *Gedeon v. State Farm Mutual Auto Insurance Co.*, 410 Pa. 55, 188 A.2d 320 (1963).

■■ At oral argument, Grant requested permission to amend its complaint to include a claim for interest which the

court refused. Permission to amend or not is within the sound discretion of the court. *Potts Mfg. Co. v. Loffredo*, 235 Pa.Super. 294, 340 A.2d 468 (1975). No abuse of discretion is shown where the request is made four years after the complaint was filed.

Order affirmed.

HOFFMAN, J., concurs in the result.