629 A.2d 246

**INDUSTRIAL CERAMICS, INC., Petitioner,**

**v.**

**DEPARTMENT OF LABOR AND INDUSTRY, STATE WORKMEN'S INSURANCE FUND, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 15, 1993.

Decided July 16, 1993.

Petition for Allowance of Appeal Denied Nov. 29, 1993.

---

Daniel D. Harshman, for petitioner.

Brian P. Downey, for respondent.

Before COLINS, J., KELLEY, J. (P.), and LORD, Senior Judge.

LORD, Senior Judge.

Industrial Ceramics, Inc. (ICI) appeals a Board of Claims (Board) order dismissing ICI's complaint for lack of jurisdiction[1] and a Board order denying ICI's motion for reconsideration.

ICI, a former policyholder with the State Workmen's Insurance Fund (SWIF), filed an amended complaint with the Board against SWIF alleging that SWIF breached its contractual duties to defend workmen's compensation claims, to set insurance reserves fairly and to handle claims in a workmanlike manner. It was further alleged that these breaches caused ICI to sustain a series of economic losses, including artificially increased premiums and lost profits, and produced a corresponding economic gain to SWIF.

1. The Board regarded its decision to dismiss as an interlocutory order, from which it "allowed" an interlocutory appeal. However, since the Board dismissed the complaint on jurisdictional grounds, its order was final and no interlocutory appeal was necessary under Pa.R.A.P. 1311.

 SWIF filed preliminary objections to the complaint, arguing that the Board lacked jurisdiction because the complaint sounded in tort, from which claim SWIF is immune as a Commonwealth agency, and because the complaint was a request for a refund and/or a challenge to rate-making decisions of the Insurance Commissioner. The Board denied the preliminary objections and ordered SWIF to file an answer. However, following SWIF's answer and "application to amend order for interlocutory appeal," the Board accepted SWIF's jurisdictional arguments and ordered the complaint dismissed. The Board also denied a motion by ICI to reconsider the dismissal. ICI now appeals both orders to this Court.[2]

ICI argues that its complaint made out a contract claim under both breach of express contractual duties and breach of an implied duty of good faith. It contends that its complaint does not sound in tort, because the damages it seeks are for purely economic loss, but that if it does also sound in tort, the Board nevertheless erred in eliminating ICI's freedom of choice between tort and contract theories. ICI also cites as error the Board's conclusions that it was required to exhaust administrative remedies before the Insurance Commissioner and that ICI's claims should have been brought before the Board of Finance and Revenue. We agree with the foregoing contentions by ICI and we therefore reverse and remand.

The solution to the questions raised in this appeal can only be ascertained after a careful examination of ICI's complaint and, most importantly, a conclusion as to what ICI is *not* claiming. The following excerpts are representative of the complaint:

**2.** Our scope of review of the Board's order dismissing the complaint is limited to determining whether the Board committed an error of law or made findings of fact not supported by substantial evidence. *Three-O-One Market, Inc. v. Department of Public Welfare,* 64 Pa.Commonwealth Ct. 237, 439 A.2d 909 (1982). Our scope of review of the denial of the motion to reconsider is limited to a determination of whether the Board abused its discretion. *Stratton C. Schaeffer/Brosch and Cowley v. Department of General Services,* 111 Pa.Commonwealth Ct. 60, 533 A.2d 495 (1987).

4. ICI and SWIF entered into a contract of insurance on December 17, 1985 and continuing through December 17, 1988. . . .

5. The contracts of insurance contain both express and implied obligations and bound SWIF to investigate, defend and indemnify ICI for claims made by employees of ICI for work related injuries and diseases. . . .

6. SWIF assumed a contractual duty to defend the plaintiff in any proceeding seeking workers' compensation benefits and to pay all compensation which ICI was legally obligated to pay. SWIF further assumed the right opportunity and duty to investigate, negotiate or settle workers' compensation claims.

7. Plaintiff assumed the duty to cooperate with SWIF and to pay premiums in return for proper insurance coverage, proper claim handling and proper defense of the claims. . . .

8. Premiums were charged to ICI based upon industry statistics and the individual loss experience or loss ratio of the plaintiff, a portion of which calculation is derived from the calculation of "incurred losses" as set forth in Retrospective Premium Endorsement, Section A, 3.

9. The individual loss experience of the claimant is determined in part by the manner in which past and present workers' compensation claims are defended, handled, reserved and/or investigated by SWIF.

10. By virtue of the aforementioned written contract, SWIF assumed expressed and implied duties to act in good faith and in a commercially reasonable fashion toward the plaintiff and to defend, investigate and handle claims in a manner beneficial to the plaintiff.

11. The plaintiff has paid premiums and performed all obligations due under the above-referenced contract of insurance.

12. SWIF materially breached its contractual duties to the claimant by failing to perform its contractual duties generally and/or by only partially performing those duties, which

failure to fully perform constituted a material breach of the contract.

13. It is further averred that the obligation of SWIF to properly handle, reserve, investigate and move cases to resolution is implied in law by virtue of the provisions of the Retrospective Premium Endorsement, sub-part A....

15. SWIF failed to perform and materially breached its contractual duties owed to the plaintiff in one or more of the following respects: [Here ICI set out eight specific allegations of breach]....

16. SWIF's breach of its contractual duties to ICI in the handling of ICI's workmen's compensation claims has lead [sic] to a dramatic and unwarranted inflation of ICI's insurance premiums to the detriment of ICI and to the monetary advantage of SWIF....

19. In addition to the unwarranted increases in its retrospective premiums as a result of SWIF's breach of its contractual obligations, the claimant, ICI incurred consequential damages resulting from SWIF's breach of contract....

■ ICI argues that its complaint made out a contract case by alleging SWIF was contractually obligated to investigate, defend and indemnify all workmen's compensation claims, breached these obligations on numerous occasions and thereby caused damages. *See General State Authority v. Coleman Cable & Wire Co.*, 27 Pa.Commonwealth Ct. 385, 365 A.2d 1347 (1976). ICI also contends that it made out a contract case on the implied duty of good faith. *See Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 188 A.2d 320 (1963).

SWIF argues that the claim is one of negligence, not contractual bad faith, and therefore as a tort claim is barred by sovereign immunity. Having reviewed the complaint, much of which is set out above, we cannot sustain SWIF's argument. SWIF claims it did not fail to defend, indemnify or otherwise act but instead allegedly acted in a fashion ICI did not prefer; therefore, the suit is in tort because cases of nonfeasance can be brought in contract, but cases of malfea-

sance must be brought in tort. *See Raab v. Keystone Ins. Co.*, 271 Pa.Superior Ct. 185, 412 A.2d 638 (1979), *appeal dismissed as having been improvidently granted*, 496 Pa. 414, 437 A.2d 941 (1981). Without discussing the merit of the distinction for which SWIF cites *Raab*, it is clear that the complaint does allege nonfeasance; the best example of that is in paragraph 12 of the complaint. More importantly, *Raab* does *not* hold that a case of malfeasance must be brought in tort. To the contrary, that case and similar cases deal with the circumstances under which a party to a contract can go beyond its contractual remedies and pursue a tort claim arising out of the contractual relationship.

SWIF also argues that a bad faith claim must be brought in tort, citing *D'Ambrosio v. Pennsylvania Nat. Mut. Casualty Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981), where a tort claim of bad faith in handling claims was rejected as a cause of action supplementing statutory law. We disagree. Again, this case cited by SWIF does *not* stand for the proposition that a particular claim must be brought in tort. *D'Ambrosio* rejected a bad faith cause of action in tort and thereby dismissed claims for punitive damages and emotional distress. The Supreme Court was satisfied that "appellant has an adequate remedy in assumpsit." *Id.* at 511, 431 A.2d at 972.[3]

We hold that ICI's complaint made out a contract claim against SWIF. Jurisdiction therefore rests exclusively with the Board. 72 P.S. § 4651-1. We agree with ICI that even

3. In *Pekular v. Eich*, 355 Pa.Superior Ct. 276, 513 A.2d 427 (1986), the Superior Court held that the *D'Ambrosio* opinion refused to supplement the statutory remedy of the Unfair Insurance Practices Act (UIPA Act), Act of July 22, 1974, P.L. 589, 40 P.S. §§ 1171.1–1171.15, with a judicially created cause of action which had not previously been recognized by Pennsylvania courts. The Superior Court did not read *D'Ambrosio* to preclude existing common law remedies such as fraud and deceit. *Id.* In the case before us now, ICI's complaint appears to state a good faith cause of action which was cognizable prior to the adoption of the UIPA Act. *See Gedeon; see also Gray v. Nationwide Mutual Insurance Co.*, 422 Pa. 500, 223 A.2d 8 (1966). We do not hold otherwise, particularly considering that this case is still in its initial pleading stage and the question before us is one of jurisdiction. Finally, we note that, regardless of the breach of implied good faith claim, ICI has made out a contractual claim of breach of express contractual provisions.

assuming, *arguendo*, its allegation could give rise to a tort claim, it is not thereby precluded from pursuing its contract claim. In fact, it is clear from the complaint that ICI is not seeking tort damages,[4] and in any event the Board would be unable to award such damages.

Our analysis thus far is not necessarily contrary to that of the Board. Indeed, in dismissing ICI's complaint the Board did not retract its earlier holding, in its decision on preliminary objections, that "the factual situation, as set forth in this Complaint, certainly does not sound in tort." (Decision of the Board, May 5, 1992, p. 4). Nevertheless, the Board did reverse its earlier holding that jurisdiction did not lie with the Insurance Commissioner or the Board of Finance and Revenue. We now address this reversal.

■ The Board determined that ICI was required to first exhaust an administrative remedy available to it by following the review process under Section 654 of the Insurance Company Law,[5] 40 P.S. § 814. The Board narrowly focused on the premium overcharge element of ICI's claim and apparently decided that resolution of the issue would come from a rote investigation into the classifications, rates and calculations involving the premiums. This would require review by the Insurance Commissioner. *See Nagle v. Pennsylvania Insurance Department*, 46 Pa.Commonwealth Ct. 621, 406 A.2d 1229 (1979), *aff'd in part and rev'd in part*, 499 Pa. 139, 452 A.2d 230 (1982). The complaint here, however, clearly seeks and requires a determination based on the contract, and this is within the Board's prerogative. Further, ICI does not merely seek remedies involving its premium; it specifically seeks consequential damages stemming from the alleged breach of contract.

4. We must note here that in its second amended complaint ICI added a request for punitive damages. We do not by this opinion imply that this claim is cognizable under the Board's jurisdiction.

5. Insurance Company Law of May 17, 1921, P.L. 682, *as amended*, 40 P.S. §§ 1–1101.

The Board similarly focused on the premium issue when it wrote that premium refunds are governed by The Pennsylvania Workmen's Compensation Act [6] and The Fiscal Code [7] and thereby suggested that ICI pursue its claim with the Board of Finance and Revenue. Again, we conclude that the Board's focus on the premium issue was too narrow and that the Board failed to acknowledge the need for contractual determinations.

In its earlier decision, dismissing SWIF's preliminary objections, the Board had written:

A review of this position [that the Insurance Commissioner or the Board of Finance has jurisdiction rather than the Board of Claims] leaves the Board at a loss as to how the Defendant can read the Complaint and set forth this argument. The Board is of the opinion that the Plaintiff is *not* questioning the rules and regulations of the insurance industry, as they apply to the premiums paid by the Plaintiff. The Plaintiff is stating that if the Defendant performed its contract in accordance with good workmanship, the ratio, or the factors, employed by the Defendant to establish the premium would have been lower, and therefore, would lower the premium charged by the Defendant. The Plaintiff is *not* stating that the Defendant did not apply the appropriate insurance rules to establish the premium. The Plaintiff is arguing that the factors leading to the basis upon which the Defendant established its premium were wrong because the Defendant did not perform the contract in accordance with the intent of the parties.

6. Act of June 2, 1915, P.L. 736, *as amended,* §§ 1–1031. The specific section of the Act cited by the Board concerns refund of excess workmen's compensation premiums paid or liens on underpaid premiums due. 77 P.S. § 343.

7. Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §§ 1–1867. Section 503(a) of The Fiscal Code provides that the Board of Finance and Revenue shall have the power "to hear and determine any petition for the refund of taxes, license fees, penalties, fines, bonuses or other moneys paid to the Commonwealth and to which the Commonwealth is not ... entitled and ... to refund such ... out of the fund into which such taxes, license fees, penalties, fines, bonuses or other moneys were originally paid ..." 72 P.S. § 503(a).

> It would appear that the Plaintiff is *not* seeking a refund. The Plaintiff is seeking a sum due to the breach of the contract on behalf of the Defendant.

(Decision of the Board, May 5, 1992, p. 6) (emphasis added).

We agree with the Board's well-reasoned original position, and we see nothing which would have compelled the Board to subsequently reverse itself. We emphasize that ICI is clearly not seeking directly a return of the premiums it paid but is instead stating that, because SWIF did not comply with its contract to properly defend the claims against ICI, ICI had to pay higher premiums and therefore those higher premiums are one item of its damages.

Based on the foregoing analysis, we agree with ICI that the Board of Claims, not the Insurance Commissioner or the Board of Finance and Revenue, has jurisdiction. In dismissing ICI's complaint, the Board stated that there were grounds for differences of opinion on the jurisdictional question. We hold that in this case the Board answered the question correctly the first time, when it dismissed SWIF's preliminary objections, and need not have altered its analysis in the decisions herein appealed.

Accordingly, the orders of the Board are reversed,[8] and the case is remanded to the Board so that ICI may proceed with its action before the Board.

## ORDER

AND NOW, this 16th day of July, 1993, the orders of the Board of Claims, in docket No. 1520, dated October 15, 1992 and November 23, 1992, are hereby reversed, and the case is remanded to the Board so that petitioner may proceed with its action before the Board.

Jurisdiction relinquished.

---

8. Since we conclude that the dismissal of the complaint was an error of law, it follows that the denial of the motion to reconsider cannot stand. We therefore reverse both orders.