NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1515
_____


NATIONWIDE MUTUAL INSURANCE COMPANY,
SUCCESSOR BY MERGER TO
HARLEYSVILLE MUTUAL

v.

DAVID RANDALL ASSOCIATES, INC.;
RAYMOND H. MILEY, III,

Appellants


_____


Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-12-cv-04208)
District Judge: Honorable J. Curtis Joyner

_____


Argued November 21, 2013

Before:  AMBRO, SMITH, and CHAGARES, <u>Circuit Judges</u>

(Opinion filed: January 9, 2014)

F. Emmett Fitzpatrick, III, Esquire  (Argued)
Flamm Walton
794 Penllyn Pike
Blue Bell, PA   19422

    Counsel for Appellants

Laura K. Hoensch, Esquire
William T. Salzer, Esquire (Argued)
Swartz Campbell
50 South 16th Street
Two Liberty Place, 28th Floor
Philadelphia, PA 19102

      Counsel for Appellee

———————————

OPINION

———————————

AMBRO, <u>Circuit Judge</u>

## I. Background

Nationwide Mutual Insurance Company ("Nationwide") insured David Randall Associates, Inc. ("Randall Associates") and its director Raymond H. Miley, III ("Miley") under a commercial general liability policy (the "Policy"). The Policy provided coverage for "bodily injury" and "property damage," but only if such damage was caused by an "occurrence." JA 105a. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 118a. The Policy did not cover "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." *Id.* at 106a.

In May 2011, City Select Auto Sales, Inc. ("CSAS") filed a putative class action (the "Class Action") against Randall Associates and Miley in the United States District Court for the District of New Jersey. The Class Action Complaint alleged that they had violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending unsolicited facsimile advertisements. It also alleged that Miley

2

approved, authorized and participated in a scheme to broadcast faxes by (a) directing a list to be purchased and assembled; (b) directing and supervising employees and third parties to send the faxes; (c) creating and approving the form of faxes to be sent; (d) determining the number and frequency of the facsimile transmissions; and (e) approving and paying third parties to send the faxes.

JA at 40a. The Class Action Complaint further alleged that Randall Associates and Miley

knew or should have known that (a) Plaintiff and the other class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods or services, (b) that Plaintiff and the other class members did not have an established business relationship, and (c) that [the faxes sent by the Defendants were] an advertisement.

*Id.* at 44a.

In July 2012, Nationwide brought this action against Randall Associates and Miley in the United States District Court for the Eastern District of Pennsylvania, and requested a declaratory judgment that it was not obligated to defend or indemnify either of them in the Class Action, as Randall Associates' transmission of unsolicited faxes was intentional and thus not covered by the Policy. Both sides filed motions for summary judgment. The District Court granted Nationwide's motion and denied the cross-motion of Randall Associates and Miley. They timely appealed. [1]

## II. Discussion

We exercise plenary review over the District Court's grant of a motion for summary judgment, and assess the record using the same summary judgment standard

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291.

that guided the District Court. *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 557 (3d Cir. 2008).

A.     Duty to Defend

Under Pennsylvania law, an insurer has a duty to defend "whenever the complaint filed by the injured party may potentially come within the coverage of the policy." *Gedeon v. State Farm Mutual Auto. Ins. Co.*, 188 A.2d 320, 322 (Pa. 1963). In Pennsylvania damages may not be recovered under an "accidental coverage" policy if the insured acted intentionally. Courts consider whether the insured "desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 989 (Pa. Super. Ct. 1986).

In deciding this case, we are persuaded by the reasoning of a prior case that is virtually indistinguishable – *Melrose Hotel Co. v. St. Paul Fire and Marine Insurance Co.*, 432 F. Supp. 2d 488 (E.D. Pa. 2006), *aff'd*, 503 F.3d 339 (3d Cir. 2007).[2] In *Melrose*, the insured (Melrose Hotel Company) hired a third party to send fax advertisements. 432 F. Supp. 2d at 490. When a recipient of those faxes sued Melrose Hotel alleging violations of the TCPA, the Hotel's insurer claimed it had no duty to defend under a policy that provided coverage for only accidental property damage. *Id.* at 505. The Hotel argued that a duty to defend existed because the underlying complaint

_____

[2] In *Melrose Hotel*, our Court issued a Judgment Order explicitly adopting the District Court's ruling and rationale. There is an issue as to whether such a Judgment Order is precedential. We do not address the question in this opinion, but flag it for our Court's future consideration.

asserted that it "should have known" that the faxes were unauthorized and that "such language equates with unintentional conduct and therefore falls under the Policy." *Id.* at 504. The *Melrose Hotel* Court rejected this "should have known" argument, finding instead that the underlying complaint – which contained no factual allegations that the Hotel acted negligently, that the faxes were sent by mistake, or that it believed the faxes were being sent with the receiver's permission – asserted unequivocally that the Hotel "intended to fax its advertisements to Class members." *Id.* at 510.

Here, CSAS's complaint in the Class Action similarly contains no factual allegations that Randall Associates acted negligently, that the faxes were sent by accident, or that it mistakenly believed the faxes were sent with the recipients' permission. Rather, the Class Action Complaint alleges that Miley was actively involved in the scheme to broadcast fax advertisements. Accordingly, the District Court correctly found that, despite language in the Complaint that Randall Associates "knew or should have known" of the TCPA violations, the Complaint's "allegations of a sophisticated scheme, alongside the inherently intentional nature of sending a fax advertisement … , [are] squarely outside the Policy's coverage for an 'accident' and within the Policy's exclusion for coverage which is 'expected or intended.'"

Appellants argue that, rather than following *Melrose Hotel*, we should look to *Telecommunications Network Design Inc. v. Brethren Mutual Insurance Co.*, 83 Pa. D. & C. 4th 265 (Pa. Com. Pl. 2007), a Pennsylvania trial court decision that disagreed with *Melrose Hotel*'s reasoning. In *Brethren Mutual*, a plaintiff brought suit against Paradise Distributing Inc. for, *inter alia*, violating the TCPA by sending unauthorized faxes. *Id.*

5

at 267. The plaintiff later amended its complaint to add Canafax Marketing, the third party vendor hired by Paradise to send the faxes, as a defendant. *Id.* at 271. The underlying complaint asserted that Paradise and Canafax "knew or should have known that their misappropriation of [plaintiff's] resources was wrongful and without authorization." *Id.* at 273. The Pennsylvania Court declined to follow *Melrose Hotel* and held that Brethren Mutual, the insurer, had a duty to defend Paradise because, without knowing more about the relationship between Paradise and Canafax, the Court could not find that Paradise "intentionally transmitted its advertisements to the plaintiff class." *Id.* at 276 ("It is possible that in hiring Canafax, Paradise did not intend or expect its advertisements to be sent to unwilling recipients and that Canafax did so without Paradise's knowledge and/or consent").

We are not persuaded by *Brethren Mutual* in our case. Unlike that decision, where the nature of the relationship between the policyholder and the third-party vendor was unknown, here the relationship between Randall Associates and the third-party vendor is well defined – the Class Action Complaint explicitly alleges Miley's involvement with the fax transmissions. Additionally, in *Brethren Mutual* the plaintiff amended the underlying complaint to include the third party vendor as a defendant, suggesting that the plaintiff considered the vendor to have committed wrongdoing separate from the policyholder. Here the Class Action Complaint names only Randall Associates and Miley as defendants and in no way suggests that Randall Associates negligently hired a third party that, unbeknownst to it, acted unlawfully. Finally, although the Pennsylvania Supreme Court has not addressed the particular legal issue of a duty to defend in TCPA

cases, nothing supports Randall Associates' contention that, if confronted with the issue, the Pennsylvania Supreme Court would follow *Brethren Mutual* rather than *Melrose Hotel*. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990) ("In cases where the state's highest court has not considered the precise question to be answered, the federal court is called upon to predict how the state court would resolve the issue should it be called upon to do so."). No Pennsylvania appellate court has considered *Brethren Mutual*.

On the merits, numerous other cases, when determining whether conduct is "accidental" in non-TCPA contexts, are clear that even if the policyholder were negligent, the damages that occurred from the policyholder's negligence must be "fortuitous" in nature in order to qualify as resulting from an accident. *See, e.g., Specialty Surface Int'l., Inc. v. Cont'l. Cas. Co.*, 609 F.3d 223, 238-39 (3d Cir. 2010) ("damages that are a reasonably foreseeable result" are not a covered "occurrence"); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 899 (Pa. 2006) (faulty workmanship claim did not "present the degree of fortuity contemplated by the ordinary definition of 'accident'"). Accordingly, the crucial inquiry in deciding whether an insurer has a duty to defend is whether the damages "were caused by an event so unexpected, undesigned and fortuitous as to qualify as accidental." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 293 (Pa. 2007). Here, the damages caused by Randall Associates' transmission of faxes were a reasonably foreseeable result of its and Miley's conduct and not sufficiently "fortuitous." While Appellants might not have intended to violate the TCPA, they did intend to send the faxes

and knew that sending them would use the recipients' paper, toner, and time.  The District Court correctly found that Nationwide did not have a duty to defend.

B.      Duty to Indemnify

An insurer has a duty to indemnify only if it has a duty to defend—"a duty to defend is broader than the duty to indemnify," and therefore "a finding that [the insurer does not have a duty to defend] will also preclude a duty to indemnify." *Kvaerner*, 908 A.2d at 896 n.7 (internal citations omitted).  Because the District Court properly determined that Nationwide did not have a duty to defend Randall Associates, Nationwide also did not have a duty to indemnify that entity.

\*   \*   \*   \*   \*

For these reasons, we affirm.